IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SAM BURTON THOMPSON, JR., PLAINTIFF, | § § § | |
| VS. | § § | CIVIL ACTION NO. 4:12-CV-466-Y-BJ |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, DEFENDANT. | § § § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.   STATEMENT OF THE CASE**

Plaintiff Samuel Burton Thompson, Jr. ("Thompson") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act ("SSA"). Thompson applied for disability insurance benefits on July 23, 2010, alleging that his disability began on July 23, 2010. (Transcript ("Tr.") 16; *see* Tr. 63-64, 144.)

After his application for benefits was denied initially and on reconsideration, Thompson requested a hearing before an administrative law judge ("ALJ"). (Tr. 16, 77-78.) The ALJ held a hearing on August 4, 2011, and issued a decision on September 9, 2011, in which he found that Thompson was not disabled and was not entitled to disability insurance because he retained the

ability to perform several jobs that occurred in significant numbers in the national economy. (Tr. 16, 23-24, 28.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, of the SSA and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404 (2012). The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit." 20 C.F.R. § 404.1572. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment contained in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).

Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding his physical and mental limitations. 20 C.F.R. § 404.1520(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* At step four, the claimant's RFC is used to determine if the claimant can still do his past relevant work. *Id.* § 404.1520(e). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## ISSUES

In his brief, Thompson presents the following issues:

1. Whether the ALJ erred at Step Three in failing to fully and fairly develop the record relating to Thompson's impairments; and

2. Whether the ALJ erred at Step Five by applying the incorrect Medical-Vocational Guidelines ("GRIDS" or "grid rules") in determining Thompson was not disabled.

(Pl.'s Br. at 3, 5.)

## II. ALJ DECISION

The ALJ, in his September 9, 2011 decision, noted that Thompson was born on February 12, 1962. (Tr. 22; *see* Tr. 34,120.) The ALJ then determined that Thompson met the disability insured status requirements under Title II of the SSA through December 31, 2014. (Tr. 18; *see* Tr. 63, 144.) The ALJ further stated that Thompson had not engaged in substantial gainful activity since July 23, 2010, his alleged onset date of disability. (Tr. 18.) The ALJ further found that Thompson suffered from the severe impairments of degenerative disk disease of the lumbar spine, degenerative joint disease, and chronic obstructive pulmonary disease ("COPD") but that Thompson's impairments or combination of impairments did not meet or equal one of the impairments in the Listing. (Tr. 18-19.) The ALJ then determined that Thompson had the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to standing and walking up to 4 hours in an 8-hour workday, and sitting up to 6 hours in an 8-hour workday with the ability to alternate between sitting and standing. The claimant is also limited to occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and is restricted from climbing ladders, ropes, and scaffolding. The claimant is further limited to frequent, but not constant handling, and must avoid concentrated exposure to dust, fumes, chemicals, humidity, and temperature extremes. The claimant is restricted from working around hazards and is limited to simple job tasks that involve no reading or writing.

(Tr. 19.) Based upon his RFC assessment and the opinion of a vocational expert ("VE") who testified at the August 4, 2011 hearing, the ALJ found that Thompson was not able to perform his past relevant work. (Tr. 22; *see* Tr. 58.) However, at Step Five, the ALJ determined, based on the testimony of the VE, that there were several jobs that existed in significant numbers in the national economy that Thompson could perform. (Tr. 22-23; *see* Tr. 58.) Consequently, the ALJ found Thompson was not disabled. (Tr. 23-24.)

### III. DISCUSSION

#### A. Duty to Develop the Record at Step Three

The first issue is whether the ALJ failed to properly develop the record at Step Three relating to Thompson's impairments. Thompson argues that the ALJ erred when he failed to order a psychiatric examination and IQ test to evaluate Thompson's mental impairments, primarily Thompson's illiteracy, after Thompson's attorney requested such an examination at the hearing before the ALJ. (Plaintiff's Brief ("Pl.'s Br.") at 3-5.) Specifically, Thompson claims that the ALJ should have ordered such an examination when requested because the evidence shows that: (1) Thompson attended special education classes while in high school (Tr. 197, 310-311); (2) Thompson indicated he could neither read nor write (Tr. 170, 197); (3) Thompson testified he obtained his driver's license by taking an oral rather than a written test (Tr. 45-46); and (4) Thompson stated "that one of his past jobs required completing order forms and that his boss had to help him complete the form by telling him what it asks for and helping him with spelling when filling it out" (Pl.'s Br. at 4; *see* Tr. 35). (Pl.'s Br. at 3-4.) Ultimately, Thompson argues that a consultative examination, including an IQ test, would have caused Thompson's mental impairments to qualify as one within Section 12.05 of the Listing, or would have further limited the ALJ's RFC finding. (Pl.'s Br. at 5.)

5

To obtain a disability determination at Step Three, a claimant must show that his impairments meet or equal one of the impairments in the Listing. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion because most of the requirements are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence[1] in the record about such impairment, including findings from medical sources. 20 C.F.R. § 404.1526(c). Medical equivalence is found when an impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926.

The claimant has the burden of proving that his impairment or combination of impairments meets or equals a listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* The court will find that substantial evidence supports the ALJ's finding at Step Three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619-20.

---

[1] Relevant evidence does not include the claimant's vocational factors of age, education, and work experience. 20 C.F.R. § 416.926(c).

"Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-CV-95-O, 2010 WL 2473835, at *9 (N.D. Tex. May 13, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). However, even assuming the ALJ erred at Step Three by failing to provide reasons for his adverse findings, remand would be necessary only if the claimant's substantial rights have been affected. *Id.*; *see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

Furthermore, the Fifth Circuit imposes a duty on the ALJ to develop the facts relative to a claim for benefits fully and fairly. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). When the ALJ fails in this duty, he does not have before him sufficient facts on which to make an informed decision and his decision is not supported by substantial evidence. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). The ALJ's duty to fully and fairly develop the record may impose a duty to order an examination of the plaintiff. *See Brock*, 84 F.3d at 728. "An ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the disability determination." *Id.*; see 20 C.F.R. § 404.1517. "A consultative evaluation becomes 'necessary' only when the claimant presents evidence sufficient to raise suspicion concerning a nonexertional impairment." *Id.*; *see Haywood v. Sullivan*, 888 F.2d 1463, 1472 (5th Cir. 1989). "Nonetheless, reversal is appropriate only if the claimant shows that he

was prejudiced as a result of the insufficient record." *Hudspeth v. Astrue*, No. 4:09-CV-156-Y, 2010 WL 3033891, at *12 (N.D. Tex. July 2, 2010); *see Kane*, 731 F.2d at 1220. "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728 (citing *Kane*, 731 F.2d at 1220).

Section 12.05 of the Listing, which deals with mental retardation, states:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; *i.e., **the evidence demonstrates or supports onset of the impairment before age 22**.*

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidence by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function:

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05 (emphasis added).

In this case, the ALJ found that Thompson suffered from the severe impairments of

degenerative disk disease of the lumbar spine, degenerative joint disease, and COPD, but that none of his impairments or combination of impairments medically met or equaled the severity of one of the impairments listed in the Listing. (Tr. 18-19.) To meet the threshold requirements of Listing 12.05C, there must be evidence that Thompson met the diagnostic description of mental retardation prior to age twenty-two. *Id.*; *see Randall v. Astrue*, 570 F.3d 651 (5th Cir. 2009) (finding that "every mental disorder listing includes two independent components: a diagnostic description of the disorder and specific criteria measuring the disorder's severity"). Although a formal diagnosis of mental retardation is not required, Thompson must have exhibited deficits in adaptive functioning that manifested prior to the age of twenty-two. *See Morris v. Astrue*, No. 10-3339, 2011 WL 7341504, at *9 (E.D. La. Dec. 14, 2011); *Blackstock v. Astrue*, 527 F. Supp. 2d 604, 619 (S.D. Tex. 2007). Adaptive functions include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(1); *Blackstock*, 527 F. Supp. 2d at 619 n.14.

In this case, at the very least, Thompson has failed to establish that he had such mental deficiencies prior to reaching the age of twenty-two. To begin with, Thompson did not identify mental retardation (or any mental impairment) as a basis for disability in his applications for Social Security benefits and, as a result, such an impairment was never considered by the SSA in reviewing Thompson's claims.[2] (*See, e.g.*, Tr. 63-64, 71, 76, 148, 190, 204.) Thompson never alleged that he was mentally retarded but, instead, first requested an IQ test on a January 1, 2011 "Disability Report—Appeal," claiming that he was unable to read and write and was in special

---

[2] In fact, the SSA, in a Report of Contact dated January 5, 2011, stated, "Only physical allegations will be investigated since there is no evidence of a severe mental impairment restricting his ability to function on a regular basis." (Tr. 190.)

9

education classes in high school. (Tr. 197.)[3] The evidence in the record does not show that Thompson ever received medical treatment for any emotional or mental problems. This is not a case where evidence of adaptive functioning is ambiguous. *See, e.g., Hyatt v. Astrue*, No. 3:11-CV-681-DPJ-FKB, 2013 WL 527820, at *4 (S.D. Miss. Jan. 25, 2013). Although he attended special education classes, Thompson graduated from high school. Thompson also is married and successfully held jobs as a laundry worker, short order cook, building maintenance repairer, and machine feeder. (*See* Tr. 22, 34-35.) In addition, the evidence in the record shows that Thompson is able to care for his personal needs, drive a car, shop for groceries, pay bills, count change, use a checkbook, and walk throughout his apartment complex to socialize with friends. (Tr. 20; *see* Tr. 173-80.) All of these activities demonstrate that Thompson did not exhibit deficits in adaptive functioning that manifested prior to the age of twenty-two as required to meet Section 12.05 of the Listing. Because Thompson has failed to establish that he meets all the criteria of section 12.05 of the Listing and substantial evidence supports the ALJ's decision that he did not meet such section, remand is not required. *See Davis v. Astrue*, No. 4:11-1327, 2012 WL 524185, at *6 (S.D. Tex. Feb. 15, 2012) (finding that claimant's argument that the ALJ erred at Step Three when he found claimant did not meet the requirements for Section 12.05B of the Listing because Plaintiff has pointed to no evidence in the record nor asserted that he suffered from the impairment before age twenty-two); *Morris*, 2011 WL 7341504, at *10 ("Simply put, plaintiff has not carried his burden of proving the diagnostic criteria of Listing 12.05[] by demonstrating: 1) significantly subaverage general intellectual functioning and 2) deficits in adaptive behavior, 3) which manifested themselves before the age of twenty-two.").

---

[3] In addition, Thomson also requested IQ testing at the August 4, 2011 hearing before the ALJ and in an September 21, 2011 "Request for Review of Hearing Decision/Order." (Tr. 12, 33.) Thompson's requests were usually based on his alleged inability to read and write and on the fact that he had attended special education classes. (Tr. 33, 197.) However, the Court notes in an undated "Disability Report – Adult," Thompson indicated that he *could* read English and write more than his name in English. (Tr. 147.)

As to Thompson's argument that the ALJ had a duty to develop the record and request a consultative examination and IQ test, an ALJ is under no duty to request additional evidence as long as sufficient evidence exists to support the ALJ's determination at Step Three.[4] In other words, the "obligation for an ALJ to develop the record further 'is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" *Hyatt,* 2013 WL 527820, at *4 (quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

In addition, Thompson must establish prejudice by showing that, if the ALJ had developed the record, additional evidence would have been produced that might have led to a different decision. *Newton,* 209 F.3d at 459. In this case, Thompson requested the ALJ to order a psychiatric review examination and IQ test because he believed, based on the fact that he attended special education classes and allegedly cannot read and write, that the exam and testing would show that he met section 12.05 of the Listing. There is, however, no evidence in the record that supports Thompson's claim that he suffers from a mental impairment such as mental retardation that would trigger the ALJ's duty to develop the record as to whether Thompson met or equaled the criteria for section 12.05 of the Listing. (*See, e.g.,* Pl.'s Br. at 3-5; Tr. 33.) Furthermore, Thompson has not demonstrated that additional examination and testing would have produced additional relevant or material information that might have led the ALJ to find that Thompson met or equaled the criteria for Listing 12.05. *See Henderson v. Astrue,* No. 4:07-CV-093-A, 2008 WL 269450, at *7 (N.D. Tex. Jan. 30, 2008). Consequently, the ALJ did not have a duty to develop the record and remand is not required.

---

[4] *See, e.g., Anderson v. Sullivan,* 887 F.2d 630, 634 (5th Cir. 1989) ("An examination at government expense is not required 'unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision.'"); *Norwood v. Astrue,* No. 3:12-CV-66 HTW-LRA, 2013 WL 959937, at *6 (S.D. Miss. Feb. 22, 2013) ("An ALJ is not required to obtain an updated medical opinion on the issue of equivalency where, as here, substantial evidence supports the ALJ's finding that the Plaintiff does not meet a Listing.").

B.   **Step Five and GRIDS**

Thompson also argues that the ALJ erred at Step Five by mechanically applying the incorrect grid rule concerning age when he failed to consider Thompson an individual "closely approaching advanced age," and failed to consider Thompson's alleged illiteracy. (Pl.'s Br. at 6-7.) Thompson contends that the ALJ would have found that Thompson was disabled if the ALJ had applied the correct grid rules. (Pl.'s Br. at 6-8.) Lastly, Thompson claims that, even if the ALJ did not err in applying the wrong GRIDS, the ALJ still erred because his Step Five analysis in determining Thompson was not disabled is not supported by substantial evidence. (Pl.'s Br. at 8.)

When the Commissioner decides at Step Five that a claimant can perform available, alternative employment, that decision must be supported by substantial evidence. *Allsbury v. Barnhart*, 460 F. Supp. 2d 717, 721 (E.D. Tex. 2006). Typically, the Commissioner satisfies this burden in one of two ways. *Id.*; *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The first way is that the Commissioner can receive testimony from a VE or consider similar vocational resource evidence. *Allsbury*, 460 F. Supp. 2d at 721. The second way is that the "Commissioner can take administrative notice of [the] availability of alternative work by consulting predetermined findings contained" in the GRIDS.[5] *Id.*

The grid rules provide an analysis of the various vocational factors such as age, education and work experience in combination with the individual's RFC for work in evaluating a claimant's ability to engage in substantial gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00. Where findings of fact coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the claimant is or is not disabled. *Id.* The grid rules are to be used

---

[5] The grid rules consist of three tables (for sedentary, light, and medium work) which may be consulted once a claimant's RFC capacity is determined. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201-03. The tables direct conclusions of disability or non-disability based upon a claimant's age, education, and previous work experience. *Id.*

when a claimant has an impairment that causes the claimant to have limitations in meeting the strength requirements for a job. *Id.* "Use of the [GRIDS] does not violate the [SSA] and is judicially approved as a fair and just method of determining disability." *Nobles v. Comm'r of Soc. Sec. Admin.*, No. 9:00-CV-128, 2002 WL 553735, at *3 (E.D. Tex. Apr. 10, 2002) (citing *Heckler v. Campbell*, 461 U.S. 458 (1983)).

However, the GRIDS may not be fully applicable where the nature of a claimant's impairment is nonexertional, such as when a claimant has certain mental, sensory, or skin impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e). The Fifth Circuit has held that the use of the GRIDS is appropriate when a claimant suffers only from exertional impairments or if a claimant's nonexertional impairments do not significantly affect his RFC. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Carry v. Heckler*, 750 F.2d 479, 483 n.9 (5th Cir. 1985). When the claimant has a nonexertional factor that limits the range of jobs a claimant can perform, the ALJ cannot solely rely on the GRIDS and must also rely on VE testimony to establish that jobs exist. *Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). *See also Bolton v. Callahan*, 984 F. Supp. 510, 513-14 (N.D. Tex. 1997); *Frazier v. Chater*, 903 F. Supp. 1030, 1034 (N.D. Tex. 1995).

In this case, the ALJ found at Step Five that, considering Thompson's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Thompson could perform; thus, he was not disabled. (Tr. 22-23.) In making such a determination, the ALJ stated:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age,

> education, work experience, and residual functional capacity. The vocational expert, Shelly Eike, testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as small parts inspector (DOT #559.687-074). Said job is light unskilled work, has a specific vocational preparation (SVP) rating of two (2), with 4,000 jobs in the region and 45,000 jobs nationally. Ms. Eike further stated that the individual could work as a[] small product assembler (DOT #706.684-022), which is light unskilled work, has a specific vocational preparation (SVP) rating of two (2), with 5,000 jobs in the region and 50,000 jobs nationally. Finally, she stated that the individual would be able to work as a sorter (DOT #649.687.010), which is light unskilled work, has a specific vocational preparation (SVP) rating of two (2), with 3,000 jobs in the region and 40,000 jobs nationally.
>
> . . . .
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(Tr. 23.)

Contrary to Thompson's claims, the ALJ did not err by relying on an incorrect grid rule at Step Five to determine that Thompson was not disabled. It is clear that the ALJ chose not to rely on the GRIDS because Thompson's "ability to perform all or substantially all the requirements of [the full range of light work] ha[d] been impeded by additional limitations." (Tr. 23.) Instead, the ALJ chose to rely on the testimony of the VE at Step Five to determine that Thompson was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 23.) "The ALJ, while stating that he used the grid rules as a 'framework' of reference, nevertheless elicited testimony from a VE. The ALJ's reference to the [GRIDS] as a framework was surplusage, and that reference does not impugn the ultimate decision." *Fosha v. Barnhart*, 372 F. Supp. 2d 948, 956 (S.D. Tex. 2005). Because the VE's testimony constitutes substantial evidence for the ALJ to rely on at Step Five, the ALJ did not err. *See Allsbury*, 460 F. Supp. 2d at 721. Consequently, remand is not required.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

### **NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## **ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until July 24, 2013, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

15

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 10, 2013.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv